Garbes vs. Roberts.

─────────────

GARBES, Appellant, vs. ROBERTS, Respondent.

*November 17, 1897 — January 11, 1898.*

*Vendor and purchaser of land: Failure to deliver possession: Rescission: Judgment: Voluntary payment.*

1. The purchaser of a farm, having commenced an action to rescind the contract of sale, refused to take possession of the property when it was tendered to him during the months of March and April. Thereupon the vendor, who was a nonresident, for the protection of both parties, let the farm for the season, under an agreement for a fair division of the crops with the person ultimately found entitled thereto. Before the lease expired the action for rescission

Garbes vs. Roberts.

was decided against the purchaser, and he immediately demanded possession. *Held*, that the vendor's inability to deliver possession at that time because of the lease did not authorize a rescission, since the purchaser by his own acts had helped to bring about the existing state of affairs.

2. In an action to recover back the purchase price of the farm on the ground of such failure to deliver possession, the vendor set up a counterclaim for taxes paid by him, which the purchaser had agreed to pay. *Held*, that a judgment offsetting such taxes against the crops was erroneous, the crops being in no sense before the court.

3. Where the vendor under a land contract voluntarily pays taxes which the purchaser had agreed to pay, before the same became delinquent, he cannot recover the amount paid from the latter.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Affirmed in part; reversed in part.*

This is an action by the vendee in a contract for the sale of a farm to recover back from the vendor $1,500 paid upon the contract, and the value of nineteen promissory notes given for the balance of the purchase price, on the ground that the vendor had failed to give possession of the farm according to the terms of the contract, and that the vendee had elected to rescind the same. Trial by jury was waived, and the action was tried by the court. The facts were without material dispute, and were, in brief, as follows:

The land contract was made August 12, 1895, and by its terms *Garbes* was to pay $10,500 for the farm, viz., $150 down, $850 November 3, 1895, one note of $500, due April 1, 1896, to be indorsed by Henry Esmueller, without interest, and eighteen notes of $500 each, payable one each year during eighteen consecutive years, the first one being due May 1, 1897. Possession of the farm was to be given October 15, 1895, and the vendee agreed to pay all taxes upon the premises. *Garbes* paid the $150 down at the time of the making of the contract and execution of the notes. When the time came to give possession, viz., October 15, 1895, the

farm was in possession of a tenant of *Roberts*, who held it under a lease running until the 15th of March, 1896. This tenant refused to vacate the house and farm buildings until the expiration of his lease, but allowed *Garbes* to go on and prepare the farm for the next year's crop, which he did, doing plowing and seeding to the amount of $150 in value, and on the 3d of November he paid to *Roberts* $850 upon the contract. In November and December, 1895, *Garbes* repeatedly demanded possession of the entire farm, and finally, on the 16th of December, 1895, he served a notice rescinding the contract, and demanding return of his purchase money and notes, and, upon *Roberts'* refusal, commenced an action in equity to rescind the contract and have his money and notes returned. This action was begun in December, 1895.

On the 16th of March, 1896, and before said equity action had come to trial, *Roberts* notified *Garbes* that he could have possession of the farm, and repeated such notice several times, the last time being on the 14th of April, when he served a written notice requiring him to take possession within three days, and informing him that, if he did not, he (*Roberts*) would place a competent man on the farm to till and care for it for his (*Garbes'*) benefit. *Garbes* refused to comply, and thereupon, on the 18th of April, *Roberts* placed one Stellah upon the farm, under an agreement to work the same during the year 1896, and at the end of the season to turn over to the party then entitled to the same one third of all crops and one dollar per acre for pasture land, except that the winter wheat already sown was to be divided equally, and Stellah was to quit the farm November 1, 1896. Stellah took possession under the agreement, and proceeded to cultivate the farm.

The equity action for rescission was brought to trial in July, 1896, and on the 8th of that month findings were made, in effect, that *Garbes*, by making his payment of $850,

and by taking possession of the plow land after October 15, 1895, had waived his right to rescind the contract because of failure to give possession at the time fixed, and awarding him $500, with interest, as damages for defendant's failure to give possession at the time agreed on, which sum (at defendant's option) was to be applied as a payment on the contract, or *Garbes* might surrender in writing his interest in the lands and receive from *Roberts* said sum of $500, and interest from December 16, 1896. Upon this finding judgment was entered on motion of *Garbes'* attorneys, July 10, 1896, adjudging that said damages, amounting to $520, be applied upon and deducted from the first payment thereafter required to be made upon the contract. This judgment was never appealed from, and the damages are set up as a payment on the contract in the complaint in the present action.

On the 15th of July aforesaid, *Garbes* demanded possession of the premises from Stellah, which was refused, and also served on *Roberts*, at his residence at Mankato, Minnesota, a written demand for possession, and notifying him that he should rescind the contract if such possession was not delivered within fifteen days. Possession was not delivered, but on the 25th of July, 1896, *Roberts* delivered to *Garbes* the agreement with Stellah, with an assignment of all rights under it to *Garbes*. On the 17th of August, *Garbes* served notice on *Roberts*, electing to rescind the contract and demanding return of the purchase money and notes, and, such notice not being complied with, he commenced this action. Stellah left the farm, leaving the share of crops thereon agreed to be left, and they are in possession of the defendant, and amount to about $300 in value. *Roberts* paid the taxes for 1895 on the farm, amounting to $71.72, before the same became delinquent, and without plaintiff's request. Upon these facts judgment was rendered that the plaintiff take nothing by his action, but that the defendant be en-

titled to deduct the sum of $71.72 for taxes paid from the crops on the farm, and that the defendant recover costs. From this judgment plaintiff has appealed.

For the appellant there was a brief by *Higbee & Bunge*, and oral argument by *G. W. Bunge.*

*C. L. Hood*, for the respondent.

Winslow, J. The judgment in the equitable action conclusively establishes the fact, as between the parties, that *Garbes* had waived his right to rescind the contract on account of failure to deliver possession of the farm in October. Such being the fact, he should have taken possession of the farm in March or April, 1896, when it was repeatedly offered to him. Not taking possession at that time, it is difficult to see why *Roberts* did not take a proper and reasonable course in placing the farm in the hands of Stellah for cultivation under an agreement for a fair division of the crops for the benefit of the person who should ultimately prove to be entitled thereto. To leave the farm unoccupied and uncultivated would certainly have been to subject the same to great risk, and would be directly contrary to all principles of good husbandry; to place it in the hands of hired help, without supervision, would have been unquestionably unsatisfactory and unremunerative. Under the peculiar and unexpected circumstances in which *Roberts* was placed, being himself a nonresident, it seems to us that he adopted the only prudent and reasonable course in an honest endeavor to preserve from loss the interest of both himself and *Garbes*. Certainly, he seems to have exercised entire good faith, and, if he erred in judgment (which is not shown), it must be remembered that *Garbes* was at least partially responsible for the situation. Being so responsible, he cannot take advantage of a state of facts which he was largely responsible in bringing about. This action is really an action for money had and received, and such actions are subject in great degree to

equitable rules, and we conclude that the circuit court was right in holding that he had no right to rescind the contract in July, 1896, because, by his own acts, he had helped to bring about a state of facts upon which he bases his right to rescind.

We do not, see, however, upon what principle the court allowed the counterclaim for taxes paid by *Roberts* against the crops. Such a judgment appears anomalous. The crops were in no sense before the court, and how can a judgment of lien upon them be enforced in this action? Furthermore, the payment seems to have been purely voluntary. The taxes were not delinquent when paid, hence *Roberts* was not obliged to pay them to protect himself, nor did *Garbes* request him to pay them. A man cannot make another his debtor in that way.

*By the Court.*— So much of the judgment as adjudges the defendant entitled to recover upon his counterclaim is reversed, without costs, and the balance of the judgment is affirmed, and the action is remanded with directions to dismiss the counterclaim. No costs are allowed to either party, save that the appellant is to pay the fees of the clerk of this court and the costs of printing respondent's brief.